**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1147

CESAR SOLIS-FLORES,

        Petitioner,

    v.

MERRICK B. GARLAND, Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: December 6, 2022          Decided: September 11, 2023

Before DIAZ, Chief Judge, and RUSHING and HEYTENS, Circuit Judges.

Petition for review denied in part, granted in part, and remanded by published opinion. Judge Rushing wrote the opinion, in which Chief Judge Diaz and Judge Heytens joined.

**ARGUED:** Benjamin Ross Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Sarah Kathleen Pergolizzi, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Lisa T. Johnson-Firth, VANDERPOOL, FROSTICK & NISHANIAN, PC, Manassas, Virginia, for Petitioner. Brian M. Boynton, Principal Deputy Assistant Attorney General, David J. Schor, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

RUSHING, Circuit Judge:

Cesar Solis-Flores, a native and citizen of Mexico, petitions for review of a final order of removal entered by the Board of Immigration Appeals. The Board determined that Solis-Flores was ineligible for cancellation of removal because his prior conviction for receipt of stolen property was a crime involving moral turpitude. We agree and so deny the petition for review in part. The Board also held that the immigration judge (IJ) provided Solis-Flores with legally adequate notice of the conditions applicable to his voluntary departure. We disagree and so grant the petition in part and remand to the Board to consider Solis-Flores's request for a remand to the IJ for a new period of voluntary departure.

I.

In 2012, the Department of Homeland Security issued Solis-Flores a notice to appear, charging that he was removable as an alien present in the United States without having been admitted or paroled. Solis-Flores admitted he was removable as charged and applied for cancellation of removal. *See* 8 U.S.C. § 1229b(b). After conducting a hearing, the IJ concluded that Solis-Flores was not eligible for cancellation of removal because he had previously been convicted of a crime involving moral turpitude. *See* 8 U.S.C. §§ 1229b(b)(1)(C), 1227(a)(2)(A)(i). Specifically, Solis-Flores had a 2000 conviction for receiving stolen property in violation of Virginia Code § 18.2-108. But the IJ granted Solis-Flores the privilege of voluntary departure in lieu of removal. *See* 8 U.S.C. § 1229c(b).

Solis-Flores appealed to the Board. Reviewing de novo, the Board held that his conviction for receipt of stolen property was a crime involving moral turpitude and

2

therefore Solis-Flores was ineligible for cancellation of removal. The Board declined to reinstate voluntary departure or remand to the IJ for that purpose because Solis-Flores had not posted the required bond despite receiving proper notice of his obligation to do so. In reaching that conclusion, the Board held that the relevant regulation did not require the IJ to provide advance notice of the bond requirement; one Board member dissented from that holding. Solis-Flores then petitioned this Court for review.

II.

We first consider Solis-Flores's challenge to the denial of his application for cancellation of removal. Where, as here, the Board issues its own opinion without adopting the IJ's opinion, the Board's decision "constitutes the final order of removal" and "we review that opinion and not the opinion of the IJ." *Martinez v. Holder*, 740 F.3d 902, 908 (4th Cir. 2014). Solis-Flores presents only questions of law, which we have jurisdiction to resolve. *See* 8 U.S.C. § 1252(a)(2)(B)(i), (a)(2)(D). We review those questions de novo, "affording appropriate deference to the [Board's] interpretation of the [Immigration and Nationality Act] and any attendant regulations." *Li Fang Lin v. Mukasey*, 517 F.3d 685, 691–692 (4th Cir. 2008).

To be eligible for cancellation of removal, Solis-Flores was required to prove, among other things, that he has not been convicted of a crime involving moral turpitude. 8 U.S.C. §§ 1229a(c)(4)(A), 1229b(b)(1)(C), 1227(a)(2)(A)(i); *see Pereida v. Wilkinson*, 141 S. Ct. 754, 758 (2021). A crime involving moral turpitude is one that not only violates a statute but also is inherently immoral. *See Uribe v. Sessions*, 855 F.3d 622, 625 (4th Cir. 2017); *Mohamed v. Holder*, 769 F.3d 885, 888 (4th Cir. 2014). Such a crime "'requires

3

two essential elements: a culpable mental state and reprehensible conduct.'" *Sotnikau v. Lynch*, 846 F.3d 731, 736 (4th Cir. 2017) (quoting *In re Ortega-Lopez*, 26 I. & N. Dec. 99, 100 (BIA 2013)).  In determining whether a crime involves moral turpitude, courts and the Board apply the "categorical approach," which "requires that we examine the statutory elements of the crime" rather than the facts underlying the particular violation.  *Prudencio v. Holder*, 669 F.3d 472, 484 (4th Cir. 2012).  Only if "all permutations" of the proscribed conduct involve moral turpitude will the offense categorically qualify.  *Martinez v. Sessions*, 892 F.3d 655, 658 (4th Cir. 2018).

Solis-Flores disputes (1) under what circumstances receipt of stolen property involves moral turpitude, and (2) whether his statute of conviction qualifies.  We consider each in turn.

A.

The Board has long held that receipt of stolen property is a crime involving moral turpitude if the offense requires knowledge that the received property was stolen.  *See*, *e.g.*, *Matter of Salvail*, 17 I. & N. Dec. 19, 20 (BIA 1979) (holding that possession of stolen goods was a crime involving moral turpitude, "as it specifically requires knowledge of the stolen nature of the goods"); *Matter of Patel*, 15 I. & N. Dec. 212, 213 (BIA 1975) ("The crime of receiving stolen property involves moral turpitude, if knowledge that the goods were stolen is an element of the offense."), *overruled on other grounds by Matter of Castro*, 19 I. & N. Dec. 692 (BIA 1988).  In its decision below, the Board reiterated this standard and rejected Solis-Flores's argument that receipt of stolen property cannot be a crime involving moral turpitude absent proof that the accused intended to permanently deprive

4

the owner of her property. As the Board explained, it has never adopted that requirement for receipt offenses but "has always" maintained that "the salient element" for purposes of moral turpitude is "the defendant's *knowledge* of the stolen nature of the property." J.A. 5. The Board distinguished an earlier line of cases requiring proof of intent to permanently deprive for "ordinary theft or larceny offenses," explaining that theft and receipt of stolen property are "conceptually distinct." J.A. 5 n.5.

We defer to the Board's precedential "determination of what type of conduct involves moral turpitude," provided its interpretation is reasonable. *Yousefi v. I.N.S.*, 260 F.3d 318, 326 (4th Cir. 2001) (per curiam) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)); *see also Prudencio*, 669 F.3d at 484. Solis-Flores says deference is not warranted here because the Board has contradicted its own precedent and, in any event, it would be arbitrary and capricious to regard receipt of stolen property as a crime of moral turpitude without proof of intent to permanently deprive the owner of her property. *See Amaya v. Rosen*, 986 F.3d 424, 432 (4th Cir. 2021) ("An interpretation is unreasonable under *Chevron* deference if it is arbitrary, capricious, or manifestly contrary to the statute." (internal quotation marks omitted)). We disagree on both counts.

First, the Board did not contradict its precedent. Solis-Flores contends that, in 1944, the Board ruled that receipt of stolen property could be a crime involving moral turpitude only if it required proof of the receiver's intent to permanently deprive the victim of her property and that this precedent has never been overruled. The decision was *Matter of K-*, 2 I. & N. Dec. 90 (BIA 1944), and the Board held that a German statute criminalizing receipt of stolen property did not involve moral turpitude because it included "negligent

5

receipt of property by a person acting in good faith." *Id.* at 91. The Board explained that, "[w]here property is acquired without knowledge that it is stolen or without intent to deprive the rightful owner of his possession, the offense does not involve moral turpitude." *Id.* Contrary to Solis-Flores's argument, the Board did not hold that a statute must require proof the receiver intended to permanently deprive the rightful owner of the property in order to involve moral turpitude. The other Board decisions Solis-Flores cites are not to the contrary. *See, e.g.*, *Matter of G-*, 2 I. & N. Dec. 235, 238 (BIA 1945) (holding that "the original theft" involved moral turpitude because the thief intended to permanently deprive the owner of the property and "the appellant's retention of the goods with knowledge that it had been so obtained likewise involve[d] moral turpitude"); *Matter of Serna*, 20 I. & N. Dec. 579, 586 (BIA 1992) (quoting *Matter of K-*); *Matter of S-*, 4 I. & N. Dec. 365, 365–366 (BIA 1951) (examining the same German statute as *Matter of K-*).

Second, the Board's determination that knowing receipt of stolen property is a crime involving moral turpitude is reasonable. Independent of any statutory proscription, it is morally wrong to possess property knowing it has been stolen from its rightful owner. *See Mohamed*, 769 F.3d at 888 (asking whether the conduct "not only violates a statute but also independently violates a moral norm"). The vast majority of our sister circuits agree. *See Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000) (holding receipt crime was "morally turpitudinous because knowledge is a requisite element . . . and corrupt scienter is the touchstone of moral turpitude"); *De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 637 (3d Cir. 2002) ("[K]nowingly possessing stolen goods is a crime of moral turpitude."); *United States v. Castro*, 26 F.3d 557, 558 n.1 (5th Cir. 1994) ("Convictions for . . . receiving stolen

6

property with knowledge that such property is stolen constitute crimes of 'moral turpitude.'"); *Hashish v. Gonzales*, 442 F.3d 572, 576 n.4 (7th Cir. 2006) ("[R]eceiving stolen property requires the same state of mind, 'knowingly,' . . . and has been recognized as a crime of moral turpitude."); *Okoroha v. INS*, 715 F.2d 380, 382 (8th Cir. 1983) (deferring to the Board's decision that possessing stolen mail was a crime involving moral turpitude "because knowledge that the article of mail had been stolen was an essential element of the offense"); *De Leon v. Lynch*, 808 F.3d 1224, 1230 (10th Cir. 2015) ("[T]he weight of apposite caselaw from the [Board] and our sister circuits supports the view that knowing the goods to be stolen, alone, is sufficient to render an offense a crime of moral turpitude."); *Nasrallah v. U.S. Att'y Gen.*, 762 Fed. App. 638, 643 (11th Cir. 2019), *rev'd on other grounds sub nom. Nasrallah v. Barr*, 140 S. Ct. 1683 (2020) (holding that "knowledge that the items were stolen" "is enough to qualify as a crime involving moral turpitude").

Only the Ninth Circuit has held to the contrary, and it did so based on an incorrect assessment of Board precedent. *See Castillo-Cruz v. Holder*, 581 F.3d 1154, 1159–1161 (9th Cir. 2009). The court reasoned, and Solis-Flores now argues, that because the Board considers "whether there was an intention to permanently deprive the owner of his property" in assessing whether a theft offense is a crime of moral turpitude, "the same principle would appear to apply to the receipt of stolen property." *Id.* at 1159–1160 (internal quotation marks omitted). Like our sister circuits, "we are not persuaded by the

7

Ninth Circuit's analysis."[1] *De Leon*, 808 F.3d at 1229. Theft and receipt of stolen property are distinct offenses that require different mental states and different conduct. The Board used to hold that theft is not a crime of moral turpitude if the thief did not intend to permanently deprive the owner of the property; the favored example is "'joyriding'—the nonconsensual taking of a motor vehicle with the intent to return it to the owner shortly thereafter." *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847, 850 (BIA 2016); *see id.* at 854 (abandoning this rule in favor of one that requires "intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded"). But a receipt crime requires proof that a theft has already occurred; what makes receipt of stolen property morally culpable is the receiver's knowledge that the property was previously stolen. *See, e.g.*, *Matter of Serna*, 20 I. & N. Dec. at 585 n.10 (reasoning that possession of stolen property "perpetuate[s] the harm already inflicted" by the theft). The Board's theft cases, therefore, "do not shed light on the necessary scienter for the receipt or possession of stolen property to be morally turpitudinous." *De Leon*, 808 F.3d at 1229.

We defer to the Board's reasonable interpretation that "[t]he crime of receiving stolen property involves moral turpitude, if knowledge that the goods were stolen is an element of the offense." *Matter of Patel*, 15 I. & N. Dec. at 213. Proof of the receiver's intent to permanently deprive the original owner of the property is not required.

---

[1] Nor do we find persuasive Solis-Flores's citation to an unpublished decision arising out of the Ninth Circuit in which the Board complied with *Castillo-Cruz*, as it must. *See D-E-P-L-, AXXX XXX* 458 (BIA Dec. 18, 2014).

8

B.

Applying the Board's standard to Solis-Flores's crime of conviction, we conclude it qualifies as a crime involving moral turpitude. We owe no deference to the Board's determination of this issue. *See Martinez*, 892 F.3d at 661.

At the time of Solis-Flores's conviction in 2000, Section 18.2-108 of the Virginia Code stated: "If any person buy or receive from another person, or aid in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof . . . ." Virginia courts have identified four elements required for conviction under the statute: "(1) That the goods or other things were previously stolen by some other person. (2) That the accused bought or received them from another person, or aided in concealing them. (3) That at the time he so bought or received them, or aided in concealing them, he knew they had been stolen. (4) That he so bought or received them, or aided in concealing them, *malo animo* or with a dishonest intent." *Patterson v. Commonwealth*, 181 S.E. 281, 282 (Va. 1935) (internal quotation marks and citations omitted); *see Whitehead v. Commonwealth*, 684 S.E.2d 577, 580 (Va. 2009).

Because knowledge that the property was stolen is an element of Section 18.2-108, Solis-Flores's conviction thereunder qualifies as a crime involving moral turpitude. To the extent he hypothesizes about the possibility of receiving stolen property with intent to return it to its rightful owner, Solis-Flores has not shown a "realistic probability" that Virginia would apply the statute to such conduct in view of the dishonest intent element. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *see, e.g., Jones v. Commonwealth*,

9

No. 0351-16-1, 2017 WL 586519, at *3 (Va. Ct. App. Feb. 14, 2017) (describing dishonest intent as intent "to continue acting adversely to the owner's property interest").

Solis-Flores alternatively contends that someone could be convicted under Section 18.2-108 for passively receiving benefits flowing from the sale of stolen goods, which would fall outside the bounds of what the Board considers a crime involving moral turpitude. In support of his contention, Solis-Flores relies on *Whitehead v. Commonwealth*, No. 1699-06-3, 2008 WL 762189 (Va. Ct. App. Mar. 25, 2008). There, the defendant's partner stole personal property, sold it, and used the proceeds to support the defendant and her child. The Virginia Court of Appeals affirmed her conviction for receipt of stolen property. But the Virginia Supreme Court reversed, deriding the Court of Appeals' decision as "*plainly wrong* in holding that Whitehead 'received' the property merely because she benefited from the proceeds of its sale." *Whitehead*, 684 S.E.2d at 581 (emphasis added). The Virginia Supreme Court emphasized that it had "never recognized this manner of receipt for the purposes of this offense" and "such a manner of receipt does not fall within the plain meaning of Code § 18.2-108." *Id.*

Despite the Supreme Court's clear statement of Virginia law, Solis-Flores asserts that the brief existence of the Court of Appeals' contrary 2008 decision demonstrates that, at the time of his conviction in 2000, it was possible for a defendant to be convicted on this erroneous theory. Yet Solis-Flores does not identify a single conviction other than Whitehead's. And, as the Virginia Supreme Court explained, the plain text of Section 18.2-108 does not support such a theory. Solis-Flores therefore has not shown a "realistic

10

probability"—as opposed to a "theoretical possibility"—that Virginia would have applied the statute in such a manner, even in 2000. *Gonzales*, 549 U.S. at 193.

Because Solis-Flores's conviction for receipt of stolen property was a crime involving moral turpitude, we deny the petition for review as regards the Board's denial of cancellation of removal.

III.

Lastly, we consider the Board's refusal to remand to the IJ for a new grant of voluntary departure. After denying cancellation of removal, the IJ granted Solis-Flores voluntary departure. Solis-Flores, however, did not post the mandatory bond. On appeal to the Board, he argued that the IJ failed to comply with 8 C.F.R. § 1240.26(c)(3)(i), which requires the IJ to inform an alien of the bond obligation before granting voluntary departure. He requested a remand for the IJ to grant a new period of voluntary departure after providing the required advisals. Over the dissent of one member, the Board held that advance notice is required only for discretionary conditions on voluntary departure and not for mandatory conditions like the bond requirement. The Board therefore concluded the IJ had not erred and denied remand.

We have jurisdiction to review the Board's interpretation of 8 C.F.R. § 1240.26(c)(3) because it is a question of law. *See* 8 U.S.C. §§ 1252(a)(2)(B)(i), (a)(2)(D), 1229c(f). At the conclusion of removal proceedings, an IJ may permit an alien to voluntarily depart in lieu of removal, provided certain criteria are satisfied. 8 U.S.C. § 1229c(b); 8 C.F.R. § 1240.26(c). An alien permitted to voluntarily depart must post a "voluntary departure bond" to ensure timely departure. 8 U.S.C. § 1229c(b)(3). "Before

11

granting voluntary departure, the immigration judge shall advise the alien of the specific amount of the bond to be set and the duty to post the bond . . . within 5 business days of the immigration judge's order granting voluntary departure." 8 C.F.R. § 1240.26(c)(3)(i).

The Board erred as a matter of law. The relevant regulation unequivocally requires the IJ, "[i]n all cases," to inform an alien of the bond amount and deadline "*[b]efore* granting voluntary departure." 8 C.F.R. § 1240.26(c)(3), (c)(3)(i) (emphasis added). The regulation makes no exception for cases in which the IJ sets the bond at the mandatory minimum of $500. Contrary to the Board's conclusion, therefore, it was insufficient for the IJ to advise Solis-Flores of the bond amount and deadline in the order itself.

The Government does not make any argument in support of the Board's ruling but instead urges us to deny the petition because Solis-Flores has not demonstrated prejudice.[2] However, the Board did not address whether an alien must show he was prejudiced by the IJ's delay in providing the required advisals or whether Solis-Flores had made such a showing. *Cf. Matter of Gamero Perez*, 25 I. & N. Dec. 164, 168 (2010) (concluding that remand is "the appropriate remedy when the mandatory advisals have not been provided"). Because "'[a]n agency's action must be upheld, if at all, on the basis articulated by the agency itself,'" we decline to consider this argument in the first instance. *Gonzalez v. Garland*, 16 F.4th 131, 144 (4th Cir. 2021) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 50 (1983)).

---

[2] The Government also has not asked us to apply 8 C.F.R. § 1240.26(i) in these circumstances. That provision states that "any grant of voluntary departure shall terminate automatically upon the filing of [a] petition [for review] or other judicial challenge" and the alternate order of removal "shall immediately take effect." 8 C.F.R. § 1240.26(i).

12

We therefore grant the petition in part and remand for the Board to consider Solis-Flores's request for remand to the IJ for a new period of voluntary departure with the required advisals.[3]

IV.

We affirm the Board's holding that Solis-Flores's conviction for receipt of stolen property rendered him ineligible for cancellation of removal. But the Board erred in concluding that the IJ was not required to advise Solis-Flores of the bond requirement before granting voluntary departure. Accordingly, we deny the petition with respect to cancellation of removal but remand for the Board to consider Solis-Flores's request for voluntary departure.

*DENIED IN PART, GRANTED IN PART, AND REMANDED*

---

[3] The parties agree that 8 C.F.R. § 1240.26(k)(1), which prohibits the Board from remanding to an IJ to reconsider a request for voluntary departure, does not apply here. Solis-Flores filed his appeal to the Board before the effective date of this new provision. *See* 85 Fed. Reg. 81588, 81588 (Dec. 16, 2020). And implementation of the regulation remains enjoined nationwide. *See Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919, 980 (N.D. Cal. 2021).